Robert Lee SANDS, Appellant,

v.

STATE of Tennessee, Appellee.

Supreme Court of Tennessee,
at Knoxville.

June 26, 1995.

John E. Herbison, Nashville, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Michael E. Moore, Sol. Gen., and Linda A. Ross, Associate Sol. Gen., Nashville, for appellee.

## OPINION

DROWOTA, Justice.

The defendant, Robert Lee Sands, appeals from the Court of Criminal Appeals' affirmance of the trial court's dismissal of his petition for a writ of coram nobis or, in the alternative, for post-conviction relief. After consideration of the arguments of the defendant and the State, we conclude that both the coram nobis and post-conviction claims are time-barred, and therefore affirm the judgment of the Court of Criminal Appeals.

### FACTS AND PROCEDURAL HISTORY

In 1977 the defendant Sands was convicted of armed robbery, kidnapping, and first-degree murder. He was sentenced to three consecutive life sentences with a consecutive five-year sentence for the use of a firearm. His convictions were affirmed on direct appeal by the Court of Criminal Appeals, and this Court denied Sands' application for permission to appeal.

In January 1979 the defendant collaterally attacked those convictions by filing a petition for post-conviction relief. Although a hearing on this petition was held, the tape recording of that hearing was lost and a second hearing was conducted. The trial court ultimately dismissed the petition, and the Court of Criminal Appeals affirmed the dismissal in December 1979.[1] The defendant filed a second post-conviction petition in August 1981,

which was also dismissed by the trial court. The Court of Criminal Appeals affirmed that dismissal in March 1982,[2] and this Court denied Sands' application for permission to appeal in June 1982.

In April 1990 the defendant filed a *pro se* petition for a writ of error coram nobis. In April 1991 the defendant amended the petition by attaching numerous exhibits for the purpose of establishing that his convictions had been obtained by the use of perjured testimony, that exculpatory evidence had been withheld, that a fraud had been perpetrated upon the court, and that newly discovered evidence entitled him to a new trial. This "newly discovered" evidence was presented in the form of affidavits, including one from co-defendant Eddie Dukes, who recanted his earlier testimony that Sands had actually killed the victim.

At some point the trial court appointed counsel to represent the defendant in these proceedings. This counsel filed a second amended petition, alleging that the jury instructions used in Sands' 1977 trial impermissibly shifted the burden of proof to the defendant, and were therefore in violation of the United States Supreme Court's holding in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The State subsequently filed a motion to dismiss the petition; and after a hearing at which the defendant was allowed to testify as to the "newly discovered evidence" claim, the trial court dismissed both the coram nobis (the newly discovered evidence) and the post-conviction (the *Sandstrom* error) claims. The defendant appealed from this ruling.

The Court of Criminal Appeals affirmed the judgment. In its opinion, the Court first held that the coram nobis claim was barred by Tenn.Code Ann. 27-7-103—the one-year statute of limitations applicable to such actions.[3] As to the post-conviction claim, the

1. Sands did not file an application for permission to appeal from this ruling.

2. The Court of Criminal Appeals' opinion affirming the dismissal of that post-conviction petition indicates that the defendant had filed a previous collateral attack, styled "Petition for Writ of Habeas Corpus." Apparently that petition was dismissed and not appealed.

3. Section 27-7-103 provides, in pertinent part: "The writ of error coram nobis may be had within one (1) year after the judgment becomes final ...". The Court also determined that the defendant had "abandoned" or waived his coram nobis claim by failing to assert it in the trial court. Because we affirm the Court of Criminal Appeals' ruling on statute of limitations grounds,

Court determined the jury instructions did in fact violate *Sandstrom* and that, pursuant to this Court's decision in *Burford v. State,* 845 S.W.2d 204 (Tenn.1992), the post-conviction claim was not barred by Tenn.Code Ann. 40–30–102—the three-year statute of limitations applicable to such claims.[4] However, the Court concluded that the *Sandstrom* error was harmless under the circumstances of the case. We granted permission to appeal in this case in order to consider the statute of limitations issues.

## I.

The first issue for our consideration is whether the Court of Criminal Appeals erred in holding that the defendant's coram nobis claim was time-barred. Although the defendant admits that the coram nobis petition was clearly filed more than one year after the judgment became final, he asserts that, pursuant to Tenn.R.Civ.P. 8.03, a statute of limitations is an affirmative defense, which must be specifically pleaded or is deemed to be waived. The defendant contends that the Court of Criminal Appeals' holding is erroneous because the State failed to specifically plead, either in its motion to dismiss or at the hearing itself, the period of limitations applicable to coram nobis actions.

The State concedes that it did not specifically cite § 27–7–103 in its motion to dismiss. However, the State also points out that it did cite § 40–30–102—the statute of limitations applicable to post-conviction claims. The State asserts that since the standard for determining the sufficiency of pleading an affirmative defense is whether the pleading gives the opposing party fair notice of the defense, its invocation of § 40–30–102 afforded Sands adequate notice that the State intended to assert that the entire petition was time-barred.

■■■ We agree with the State's argument. Although Tenn.R.Civ.P. 8.03 does require that a statute of limitations defense be specifically pleaded, it is well settled that

failure to do so does not result in a waiver of the defense if the opposing party is given fair notice of the defense and an opportunity to rebut it. *Travelers Ins. Co. v. Austin,* 521 S.W.2d 783, 785–86 (Tenn.1975); *Moore, Owen, Thomas & Co. v. Coffey,* 992 F.2d 1439, 1445 (6th Cir.1993); *McKinnie v. Lundell Mfg. Co.,* 825 F.Supp. 834, 836 (W.D.Tenn.1993). In other words, the purpose of the specific pleading requirement is to prevent a party from raising a defense at the last possible moment and thereby prejudicing the opposing party's opportunity to rebut the defense. *See Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971). Here the defendant had notice that the State intended to rely on a statute of limitations defense, and there is no indication that he was prejudiced by the State's failure to specifically plead § 27–7–103. Therefore, we affirm the Court of Criminal Appeals' judgment on this issue.

## II.

The next issue for our consideration is whether the Court of Criminal Appeals was correct in holding that our decision in *Burford, supra,* served to relieve Sands of the consequences of the expiration of the three-year statutory period of limitations applicable to his *Sandstrom* claim. A proper resolution of this issue requires us to examine *Burford.*

In August 1976, Daryl Burford pleaded guilty to and was convicted of five counts of armed robbery in Wilson County. In November 1984, Burford was again convicted of robbery with a deadly weapon in Wilson County. At the sentencing hearing, the State used this conviction and the five robbery convictions from 1976 to establish Burford's status as a habitual criminal. As a result of this designation, Burford was sentenced to life.

In February 1985, Burford was again convicted of robbery with a deadly weapon, this

---

however, we deem it unnecessary to address this issue.

**4.** Section 40–30–102 provides: "A prisoner in custody under sentence of a court of this state must petition for post-conviction relief under this

chapter within three (3) years of the date of the final action of the highest state appellate court to which an appeal is taken or consideration of such petition shall be barred."

time in Trousdale County. At the sentencing hearing, the State presented this conviction along with Burford's five 1976 convictions to have him sentenced as a persistent offender to fifty years; this sentence was to run concurrently with the life sentence he was already serving. The Court of Criminal Appeals affirmed the conviction and sentence, and this Court denied Burford's application for permission to appeal on August 4, 1986.

In 1988 Burford filed a petition for post-conviction relief in Wilson County, alleging that his 1976 robbery convictions were constitutionally invalid because he had not been advised of his right against self-incrimination before pleading guilty to the offenses. Burford also alleged that his 1984 life sentence, which was based on these convictions, was invalid. In October 1988 the Wilson County Criminal Court agreed, holding that four of the 1976 convictions were invalid; the trial court therefore reduced the 1984 life sentence to a term of forty years.

In May 1990 Burford filed a post-conviction petition in Trousdale County, alleging that his 1985 persistent offender sentence was excessive in light of the fact that four of the 1976 convictions upon which the sentence was based had been invalidated. The State responded by asserting that the petition was barred by § 40–30–102; the State argued that the three-year limitations period had begun to run when this Court denied Burford's application for permission to appeal on August 4, 1986. The Trousdale County Criminal Court dismissed the petition, holding that it was time-barred; and the Court of Criminal Appeals affirmed.

Burford appealed to this Court, arguing that § 40–30–102 violated the due process clauses of the state and federal constitutions because it denied petitioners the right to mount constitutional challenges to their convictions solely on the basis of an arbitrary time bar. This constitutional deficiency, according to Burford, rendered the statute invalid on its face. Alternatively, Burford argued that § 40–30–102 was invalid as applied to him because the application of the time-bar would force him to serve an excessive sentence.

In our analysis, we first rejected Burford's facial challenge to the statute, holding that the State has a legitimate interest in enacting procedural rules in the post-conviction context to prevent stale or fraudulent claims and to curtail the costs associated with repeated groundless claims. However, we also stated that before a State may terminate a claim for the failure to comply with procedural rules, such as a statute of limitations, the due process clauses of the state and federal constitutions require that the claimant be given "a reasonable opportunity to have the claimed issue heard and determined." *Burford*, 845 S.W.2d at 208.

After setting forth the applicable constitutional standard, we noted that Burford was prohibited from challenging the 1976 convictions in Trousdale County until the court with sole jurisdiction over the matter—the Wilson County Criminal Court—had set aside the convictions; and that, therefore, the "petitioner found himself caught in a procedural trap and unable to initiate litigation in Trousdale County despite the approach of the three-year limitation." *Id.* We then concluded that, under the circumstances of the case, the rigid application of the time-bar in § 40–30–102 served to deprive Burford of due process of law.[5]

In this case, the Court of Criminal Appeals, relying on *Burford*, determined that Sands' claim was not time-barred. The Court supported its conclusion by first pointing out the unusual circumstances of the case, which, in the Court's view, effectively denied Sands the opportunity to raise the post-conviction claim. The Court noted that sometime during the late 1970s or early 1980s Sands provided information to the

---

5. In so holding, we noted the State's argument that the petitioner actually had approximately nine months—from the time the Wilson County Criminal Court set aside four of the 1976 convictions (October 1988) until the period of limitation was to have expired (August 1989)—in which to file the post-conviction petition in Trousdale County. We determined, however, that Burford's interest in avoiding an excessive sentence outweighed the State's interest in administrative efficiency, and thus we concluded that a strict application of the time-bar did not afford Burford a reasonable opportunity to present his claim in Trousdale County.

State which led to the conviction of the certain persons on criminal charges, and that after providing this information Sands was stabbed several times. As a result of this incident, Sands was transferred to a prison in Florida, where he remained from 1984 to 1987, without access to Tennessee law books or legal materials. The Court also pointed out that Sands and his family had received death threats; and that after Sands had returned to Tennessee from Florida, an agent of the Tennessee Bureau of Investigation advised him to delay filing his petition until his mother could be removed from the state for her own protection. After this was accomplished, the Court noted, Sands filed his petition.

In addition to the factual circumstances impeding a timely filing, the Court reasoned that the *legal grounds* for the claim did not arise until 1988, when this Court, in *Swanson v. State*, 749 S.W.2d 731 (Tenn.1988), held that *Sandstrom* was to be retroactively applied.[6] The Court's finding that the legal grounds for the claim did not arise until 1988, coupled with the factual circumstances of this case, led the Court to conclude that, under *Burford*, the statute of limitations could not be strictly applied so as to bar the claim.

■ In assessing the merits of this holding, it will be helpful to summarize the basic rule to be derived from *Burford:* that, in certain circumstances, due process prohibits the strict application of the post-conviction statute of limitations to bar a petitioner's claim when the grounds for relief, whether legal or factual, arise after the "final action of the highest state appellate court to which an appeal is taken"—or, in other words, when the grounds arise after the point at which the limitations period would normally have begun to run. In applying the *Burford* rule to specific factual situations, courts should utilize a three-step process: (1) determine when the limitations period would normally have begun to run; (2) determine whether the

grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim. In making this final determination, courts should carefully weigh the petitioner's liberty interest in "collaterally attacking constitutional violations occurring during the conviction process," *Burford*, 845 S.W.2d at 207,[7] against the State's interest in preventing the litigation of "stale and fraudulent claims." *Id.* at 208.

■ With respect to the first step in the analysis, we note that at the time of Sands' conviction there was no limitation as to when a petitioner could file a post-conviction petition. However, in 1986 the legislature enacted § 40–30–102, which became effective on July 1, 1986.[8] Furthermore, the Court of Criminal Appeals held in *Abston v. State*, 749 S.W.2d 487 (Tenn.Crim.App.1988) that § 40–30–102 was to be applied prospectively, with the result being that all claims arising before July 1, 1983, could be judicially reviewed if filed before July 1, 1989. Therefore, pursuant to § 40–30–102 and the *Abston* rule, the limitations period in this case began to run on July 1, 1986.

Having made that preliminary finding, we proceed to the next step in the analysis and determine whether the *Sandstrom* error alleged by Sands arose after July 1, 1986. As noted above, the Court of Criminal Appeals found that the *Sandstrom* claim was a "later-arising ground" because this Court did not hold that *Sandstrom* could be applied retroactively until our 1988 decision in *Swanson, supra*, and because Sands effectively had no opportunity to present the claim until after the limitations period would have begun to run.

---

**6.** The issue of retroactivity is implicated because *Sandstrom* was decided in June 1979 and Sands' conviction occurred in 1977.

**7.** It is well established that since states have no constitutional duty to provide post-conviction relief procedures, *Pennsylvania v. Finley*, 481 U.S. 551, 556–57, 107 S.Ct. 1990, 1994, 95 L.Ed.2d

539 (1987), petitioners have no fundamental right to collaterally attack convictions on constitutional grounds. *See Burford*, 845 S.W.2d at 207.

**8.** Tenn.Pub.Acts 1986 ch. 634, § 1.

■ With all due respect, we conclude that this finding is erroneous. Initially, *Swanson* did not establish that the *Sandstrom* rule was to be applied retroactively; in fact, the issue of retroactivity is not mentioned in *Swanson*. Although the issue has not been explicitly addressed by this Court, *Sandstrom* nevertheless has, as a practical matter, been applied retroactively to Tennessee proceedings for many years. For example, in *Phillips v. Rose*, 690 F.2d 79 (6th Cir.1982) the Sixth Circuit Court of Appeals applied *Sandstrom* to a 1978 conviction and granted relief on a petition for a writ of habeas corpus. *See also McBee v. Grant*, 763 F.2d 811 (6th Cir.1985) (*Sandstrom*-type claim of error in jury instructions was not "novel," and should have been objected to by defendant in 1971 trial). Because *Sandstrom* had been retroactively applied to Tennessee proceedings for several years before the statutory period of limitations began to run in this case (June 1, 1986), we find that the *Sandstrom* claim was not a "later arising ground" as contemplated by *Burford*. Therefore, we do not reach step 3 in the analysis—whether the strict application of the limitations period effectively denied Sands a reasonable opportunity to present his claim. Because the statute of limitations began to run on June 1, 1986, Sands was required to file his post-conviction claim by June 1, 1989. Because he did not do so, his claim is therefore time-barred.

For the foregoing reasons, the Court of Criminal Appeals' judgment on this issue is affirmed.

ANDERSON, C.J., REID and BIRCH, JJ., and WADE, Special Justice, concur.